on behalf of the athlete, Ms. Kelly Stacey. Good morning, Mr. Kirkham. My name is Bruce Kirkham and I'm here today representing the defendant appellant, Mr. DeJuan Davis. Mr. Davis was convicted following a jury trial of possession with intent to deliver cocaine, cannabis, and dextropropoxephine. This court should reverse those convictions, however, for one of the following two reasons. Number one, the physical evidence in this case was discovered following the illegal entry into Mr. Davis' apartment. Police went to Mr. Davis' apartment to effectuate his arrest on an unrelated aggravated battery charge, arrested him inside his apartment without a warrant for his arrest, thus violating Payton v. New York. Number two, the physical evidence in this case was seized pursuant to a search that was authorized by the alleged consent by Nicole Shatley. Ms. Shatley is the defendant's girlfriend, who also lived at the apartment, however, that consent was not voluntary. Let me get to, you have a short time, let me get to one of the critical issues that I think exists. That is, I'm taking the position that it's a four-unit apartment house. Officer Wiley is on the stairway somewhere in close proximity to the defendant's apartment doorway. And he has the right to be there. Do you dispute that? I will not dispute that he was properly standing in the common hallway outside of the defendant's apartment. Now, here's the critical issue. He seized a defendant, and he has probable cause to arrest that defendant for the battery of Harrison. And as best as you can tell, the defendant is either inside the apartment or, if you believe the story of the other witness, he's outside the apartment. And the defendant is arrested not by Wiley but he's arrested by the other officer. But let's focus on Wiley. Okay. Let's say the distance is somewhere less than four feet, and the defendant, as I read, is backing away further into the apartment, and then Wiley steps into the apartment and cuffs the defendant after somewhat of a modest struggle, and then proceeds to arrest Wiley. Do you have any case law that holds that if the policeman has probable cause and the defendant is on one side of the entryway, and the policeman is on the other side of the entryway, and he's one foot apart, and if the defendant runs away, and this is a murder case, let's make it an important case, he starts running away, and the policeman doesn't know whether he's running for a gun or running to get out the back. But the policeman chases him and arrests him in the apartment. Does that fulfill the legal issue of fresh pursuit? Under your hypothetical, it would. To get around Payton v. New York, you need probable cause plus exigent circumstances. I believe that there would be case law supporting, under your hypothetical, that there are exigent circumstances, because there's the list of... My murder hypothetical?  We have officer safety issues, which courts have consistently found in favor of police doing what they need to do to protect themselves. How is the hypothetical then different than our case, in your view? Well, in this case, let me start with Payton v. New York, which drew a bright line at the threshold of the house, and said you can't cross that without exigent circumstances plus probable cause without a warrant. Okay, so clearly hot pursuit is an exigent circumstance, so that's what we're talking about here, is this hot pursuit. In this case, we'll go to arrest for an aggravated battery that's unrelated. There's no evidence to be preserved in that case. There's no... Keep your voice up a little bit more, please. I apologize. Yeah, hold it up. I've tried as close as I can. I'll try to... I know, just project your voice. Thank you, Your Honor. I apologize. That's all right. If you do that, we don't mind. It's better to hear you than not. Okay. A leading case on this question of hot pursuit is Santana, U.S. v. Santana. And in that case, briefly, the facts of that were the police had a confidential informant who went to the defendant's house and made a purchase of drugs with marked bills, went back to the place where the police were set up two blocks away, had the drugs, didn't have the money anymore. So police went to two blocks of the defendant's house. Upon their arrival, they saw the defendant standing right in the doorway. One step puts her outside, one step puts her back inside, right on the threshold. To avoid apprehension by the police, she retreated into her house, and the United States Supreme Court said the police can cross the threshold under those circumstances and arrest Santana. They upheld the intrusion in that case. In this case, we don't have facts comparable to that. We have a door that opens inward, according to Deputy Willard's testimony, which puts the defendant at least three feet back from the threshold. Deputy Willard testified, the door opened, the defendant was standing there, and everything happened very fast. The defendant took half a step backwards toward the apartment, which puts him slightly more than three feet back into the apartment. Let's assume he was one foot. I mean, you say three, but is the distance crucial? I mean, if he's on the threshold, is that different than being one foot in or three feet in? It is crucial, because Santana is the case that we had to go by, in which the defendant was right on the threshold. I would submit that any distance at all inside the threshold keeps the defendant in the privacy of his own home. The essence of hot pursuit is to allow police to pursue a defendant from a public place to a private place. And it doesn't have to be a long chase through the streets. It can be across the threshold like that, as in Santana. But in this case, where the defendant is even just one foot inside his apartment, on his side of the threshold, he is still in his private place. He is in the privacy of his own residence. And therefore, he is afforded the protections of Payton and requires some kind of exigent  public space. Now, if he was on the threshold of that apartment, is that similar to Santana? Is that common area of the hallway similar to what the court in Santana felt was being viewed by the public? Is that the analogy we're to make? So then, if he was actually on the threshold, that would have been okay. You're analogizing the common area of the hallway to where the defendant in Santana was standing, which was, I guess it was a house instead of an apartment. Well, there are two. It's definitely a common area. It's not the privacy of the inside of his apartment. There's an argument to be made, and I would submit to this court, that even if he was in the threshold, you can argue that he was still in a private place. Because if I may correct Justice Bowman just briefly on the facts, there were two apartments above the businesses. And on the ground floor, there's a locked door. You unlock the door, go up the stairs, and that's where the entrances to the apartments are. So there's an argument that because there is that locked door on the ground floor, it's still a private area. And this notion of crossing the threshold, this bright line at the threshold, consider this. Santana was decided in 1976. Payton v. New York was decided in 1980. So the Supreme Court sets the rule that if you're on the threshold, directly on the threshold, you can be pursued under the Hot Pursuit Doctrine back into your apartment. Four years later, they drew a bright line on the threshold and somewhat said, look, we're not going to let you cross the threshold. It hasn't been read as reversing Santana, but I think it's important to keep in mind that Payton is the wall that we're concerned with here. Santana is just instructive, kind of as a factual comparison here. So counsel, you're saying if there's no dispute about where the threshold is or how wide it is or how big it is, if the defendant is inside, that is on the private side of the threshold, he or she is protected, period. Because Santana says, on the threshold, we go with law enforcement. Inside the threshold, Payton says, you need a warrant unless you have exigent circumstances. Is that your position? That's correct, Judge. Because if you read Santana, there's a line in there that says the position of the defendant was such that one step put her, as a woman, outside of her residence. One step the other way and she's back inside. In this case, given the facts of being at least three feet in for the swing of the door, taking a step back, we're not in a position where one step puts him in a public area. He's farther back from that threshold. I'm a little more interested in the hot pursuit exigent circumstance issue. Factoring, I didn't mention initially, the fact that Weiler was aware that there were rumored drug transactions coming out of that. Now, this is a typical situation, another way to look at this. It's not a typical situation where you have an informant with some reliability. But in this case, you have somebody where there is a facade of reliability because she's calling the police for assistance. And then she falls into the scripts of a common citizen. And it's a face-to-face contact so the officer can decide the reliability of the witness. And there is some case that that would justify probable cause. So you have a probable cause issue relative to drugs being in the house. I don't want to get much into it, but it's undisputed that the officer knew that there was a possible rumor, let's put it that way, that it was a drug place. How does that affect the hot pursuit issue? First, let me address this point. What Ms. Harrison said was some broad, general statement of you can purchase drugs there, specifically cocaine, any time of the day or night. I would submit that that's a conclusory statement. That is not factually sufficient to support a finding of probable cause. Illinois v. Gates says conclusory statements like that are not sufficient. So you limit the battery to the drug case because Harrison said Stakely and the defendant were after her and the altercation occurred because they wanted money for unpaid drugs that she purchased. And another factor regarding probable cause, in a way she's making an incriminating statement relative to herself and that gives some boost to the probable cause issue. Yeah, there's no indication of a timeline here. We don't know if this is a month-old debt, a one-hour-old debt. We don't know that and it's just a conclusory statement. My point is the police officer is like a neighbor, it's a matter of degree. The courts consider if the officer knows he's going into a dangerous area where drugs are bought and sold, then the law gives him a little more flexibility with respect to his actions. And considering the issue of probable cause and self-protection, most of the court cases feel that when you get involved in a drug atmosphere, there's a possibility, maybe a probability, of weapons being around. And it's possible if I were a policeman, a reasonable policeman would take the position, once somebody turns around and starts a run, you might be going for a weapon, I'd better do something. How does that fit into the exigent circumstance argument? Judge Rossetti found, as a matter of fact, that they went to the apartment to arrest him on the battery charge. And I understand what you're saying. Maybe they went to arrest, maybe they went to investigate because the officer indicated that they were there and talking to the girlfriend, indicated that he told her they were there to investigate. Now, time is up. I think we're going to take a little more time. Yeah, that's all right. If you want to finish yours, I have a question too. Thank you. All right. Is there other issues? Well, I'd like to focus on the protective sweep aspect of this that Justice Bowman brought up. A couple questions. First, let's assume that Deputy Willer's initial entry into the apartment was illegal. Specifically, couldn't he, Deputy Willer, have been justified in doing a protective sweep once inside the apartment? Did he have to be there legally to do this? Yes, he does. I'm sorry to interrupt you. And if not, assuming this protective sweep doctrine applies regardless of the legality of whether or not he was there, did he have specific articulable facts that would have justified doing the protective sweep? So if you can answer both parts of it. Does he legally have to be on the premises? But if not, what did he have that he was looking at that would have given him reasonable belief that he should do a protective sweep? I believe he was in the apartment when he saw a gentleman run to his right down a hallway and heard a door close. If he's not in the apartment legally, I don't believe he has the right to do a protective sweep. You can't do a protective sweep of a private residence after you make an illegal entry into that residence. It's the same as seeing somebody through a window. If you see somebody through a window, that doesn't mean you can go in and do a protective sweep of the house. I certainly would concede the point that if the officer was legally inside the apartment and he saw the person run, by all means, he has the right to do a protective sweep. But the protective sweep, in this case, was the product of the illegal entry. And you can't reverse that. You can't say that even though he was there, once he's there, he can move to step B, which is do a protective sweep. He has to be legally inside the apartment to do that. Is there an Illinois case that says that? Is there any Illinois case law that says specifically that law enforcement has to be on the premises legally in order to do a protective sweep? I don't have one at my fingertips or on the tip of my tongue, Your Honor. But I'd be happy to look at that and get back to Your Honor and report that conclusively to you. If you'll give me leave to file another pleading of some kind, I'll send you another memo or something. But I don't have one right now. But you have to be legally inside. My position is you have to be legally inside the apartment in order to do a protective sweep. Well, if you put that argument aside for a minute, that he had to be there legally, were there specific facts that would have justified a protective sweep? I mean, you saw this man, you know, running across the apartment. I'm sorry, I missed the very first part of your question. Were there specific facts that would have justified the protective sweep put aside the fact that he was there illegally? So if he had been standing outside the apartment... Let's assume he was there legally. Inside? Inside the apartment. In that case, yes. I think that the protective sweep, if he's legally inside the apartment, he certainly has a right to do a protective sweep. And what were the facts that would have led him to believe he should have done one? He testified that when he stepped into the apartment, he saw a male run to his right down a hallway and heard a door close. So he had empirical evidence that there was another person inside the apartment. So you're saying the presence of another person in the apartment would have given him what he needed to do that protective sweep. And as he was doing the protective sweep, of course, then that's when he saw the white powder and the scale. Yes, correct. He also took out his gun for the first time for opening that door. Was that a fact? I don't know, Judge. I don't recall. My memory is blank on that particular point whether he had his gun drawn when he went to the apartment. If he did take out his gun, it would give more credence to the fact that it is a protective situation for him. But he's concerned about what he's going to find behind that door that may be somebody with a gun so he's got his gun to protect himself. It's part of the protective sweep. I remember he said that he drew his gun before he went into the back bedroom during his protective sweep because he had reason to believe there was someone in there. But I don't recall that he said he had his gun drawn when he was at the door. Oh, I can say at the door. I meant the door to the bedroom. Oh, yeah. I'm sorry. I do recall that he said he pulled his gun there. So he had his weapon drawn when he went into the bedroom and had the door closed. I'm assuming that it was right left inside the house and he was making a search relative to the person that ran across into a bedroom. Yeah, I would concede that if Willer is legally inside the apartment, he has the right to do a protective sweep. In his testimony that he found another suspect in the bedroom and saw in plain view a scale with powder on it, that was a proper plain view. But if he's not in the apartment legally, then he did not have a right to do a protective sweep and he was not in a place where he was legally entitled to be when he viewed the scale and the powder in plain view and therefore that was an illegal discovery of that physical evidence. Okay. You'll have some additional time on rebuttal. Okay, thank you. Alright, Ms. Stacey. Your honors, counsel, may it please the court, my name is Kelly Stacey on behalf of the people of the state of Illinois. In this case, there was no probable cause to arrest the defendant based on Stephanie Harrison's complaint for aggravated battery. She indicated to the officers that she had owed the defendant a debt for drugs and she was chased through the streets and her vehicle wound up being blocked in on a dead end road. The defendant and two other individuals approached the vehicle, began hitting her inside the vehicle. So there was a crime of violence that occurred. Ms. Harrison then made a distress call to the police officer. Willer was one of the officers who was investigating that complaint of aggravated battery on a public way. You're calling this a crime of violence but you're saying it was aggravated battery because it was on a public way. She didn't have to go to the hospital and didn't sustain any injuries. So in essence, it was a simple battery that was elevated because of the place it was committed. That's correct, Your Honor. Even with the simple battery, the fact that she's sitting in a vehicle presumably with her seatbelt on and has three people hitting her in the face and about the body, it would lead a reasonable person to believe they weren't free to get away from those individuals and it would seem to me to be a crime of violence. So Deputy Willer thereafter went to the defendant's house. He was familiar with the area and knew the defendant's girlfriend from previous contacts with her at a gas station where he used to patrol. And so as he's at the  of the security door was propped open because Ms. Shatley left the apartment, so he's walking upstairs. As he's standing outside of the apartment, he hears the defendant on a cell phone and he specifically hears the defendant say, What? Nicole Police? The defendant then immediately opens the door. He's standing there and the record indicates he appears to be surprised that the officer is right outside the door. So the officer went there to investigate this aggravated battery on a public way. The defendant, upon seeing the officer, darts away. At that point is when a hopper suit doctrine applies because the officer isn't required to stay right at that threshold. Once he's there to investigate a crime and is legitimately there on the scene, the suspect is not allowed to resist arrest or stop an appropriate arrest by darting into his residence. That was from the So Willard was there to arrest him right then and there? Is that what you're saying? He told him he was under arrest and then reached in to get him? Well, the trial court found that the the defendant for the aggravated battery Of course, a lot of that would depend on like a Terry stop would depend on the answers that the defendant would give. The officer didn't even have an opportunity to knock on the door. He didn't have an opportunity to announce because the defendant opened the door and immediately upon seeing the officer, he darts.  whether or not there's a door to the back, whether or not the defendant may be lunging out to get a weapon the officer, based on his reasonable belief he had a right to pursue the defendant right inside of the house What would make the officer think that the person might be armed? Well, he did have information from Ms. Harrison that drugs could be bought at that apartment any time of the day or night, specifically cocaine. And an officer he's got to be looking forward. Looking forward at his reasonable belief he's at this apartment, he knows there's drug trafficking there, and I believe it could put him in reasonable apprehension that there may be weapons in that apartment or that he may be at risk of an injury to himself. So he is not required to stop at that threshold just because the defendant darted inside. The defendant didn't close the door the officer merely followed him inside he effectuated the arrest He didn't follow him inside, the defendant never left the apartment. The defendant did not leave the apartment, but he darted inside and the officer then followed him in. That's correct And the arrest took place no further than four feet inside of the door But U.S. v. Santana U.S. Supreme Court case from 1976 one of the holdings in that case was a defendant may not defeat an otherwise lawful arrest by retreating into a private place The Illinois Supreme Court then in 2008 took up that issue in the case of People v. Wear, and they held in that case an arresting officer is not required to stop at the threshold when a defendant retreats inside his residence So as the officer goes in to effectuate the arrest of Mr. Davis, he sees another run towards the back of the apartment. At that point the officer is justified in conducting a protective sweep Let's go back and talk about before we get to the protective sweep the issue of isn't Santana distinguishable from this case? I mean we were talking with counsel Mr. Kirkham about whether it's public, is the common hallway public like the street was in Santana is this similar or isn't it really different? Well the officer was in a common hallway in that common hallway that would be considered to be a public place The court in People v. Wear determined that the threshold of the home is still a public place. Once the officer crossed that threshold, I agree that he was then in a private residence, but the doorway was open and a defendant simply cannot just run back into his house, not take a minute to talk to the officers It's an indication when there are deliberately furtive movements away from an officer merely at the sight of a uniformed officer that the defendant is trying to avoid arrest. I don't know if you could call that a public place, but you can certainly take the position that there's no expectation of privacy in the common hallway. I would agree with that as well your honor, but in the Wear case the officer specifically followed the defendant inside of his open door It was a little bit of a different case because this officer had witnessed the defendant driving his car, noticed movements of the vehicle that would indicate that the defendant was driving drunk in that case, and the defendant drove all the way up into his driveway approached his home went on into the house Doesn't that make a significant difference when the police officer observes the defendant outside his home with probable cause in that case for driving under the influence and then pursues the defendant into the home as opposed to a defendant is never outside the home Isn't that a significant factual distinction? I would agree the facts are a little bit different but in this case you have to look at whether or not officer Willer or Weiler, however you pronounce his name had probable cause to arrest him. He had probable cause to arrest him at the door because of the complaint for aggravated battery on a public way by Ms. Harrison. He also had the knowledge that there was drug activity alleged to have been going on in that apartment. Frequently when there's drug activity it's a dangerous situation, there's case law that talks about that, even from this district. But if he had probable cause at the threshold, then he still had probable cause when he followed the defendant in a hot pursuit My distinction is this defendant is never outside his house. This officer is going to the door to arrest him inside his home period. Why doesn't he need a warrant? I don't believe, well with that warrant then he has to have probable cause plus some sort of an ex-judge circumstance which is the hot pursuit because aren't the facts in this case that we don't know when the battery took place as juxtaposing when the police officer finds himself at the door? We don't know exactly how much time elapsed from the time that... And distance? I mean, we kind of don't know that from the record. Aren't we speculating that this is hot pursuit? We know that it was within that county. I'm not as familiar with this area. I'm from the southern district. The officer did arrive there within a short time of having the information I believe the record indicates that once the officer got the distress call, he was dispatched to that area to investigate that. He and another officer, I believe his name was Forenza. At this point in time there were several officers on the scene. The defendant had received that phone call that officers were out there. He opens the door. It's a little bit like that Santana case, the United States versus Santana where the woman was at the threshold of her door. Here we're still talking about an open door but we're talking about a defendant who's a little bit further back simply because the door opened to the inside. Are you asking us to extend the free zone, so to speak, from the threshold now to at least the width of the door? I believe that the people versus where case already expands that. Remember where we started on a public highway. The only difference between this case and where is the officer in where actually observed the underlying crime being committed, which was And the defendant fleeing into this home. That's right. That's clear. But here we still have a defendant at the doorway to his house. The police would have had probable cause from the time they were standing outside of there. But no way to judge in circumstances. Well, the exit in circumstances is upon seeing a uniformed officer right outside of the door he begins to dart in. He made it into about four feet. We don't know exactly from the facts how far the defendant was inside of the house. The trial court found, if you look in the record page 123, that the defendant was arrested at the door to his apartment. So at the door, we simply have to rely on the trial court who would have heard the evidence at the motion to suppress at which time the court found he was at the door to the apartment. It appears as though the defendant was trying to stop a valid arrest from happening. The court did find that the officer was there to arrest the defendant for aggravated battery on a public way. So the hopper suit allowed the officer to follow the defendant inside of the apartment. Once he's in there and has the defendant handcuffed, he sees another male run towards the back of the apartment. At that point in time, the officer was entitled to that area limited to where a suspect may be hiding. He heard the door shut to that back bedroom door after he had seen the other male suspect run towards the back. He goes back, and at that point I think you're correct, Your Honor, that he did unholster his weapon. He had the weapon in his hand. He goes into the bedroom and he finds this suspect on a boat bed covered over with some bedclothes. As he puts that suspect in custody, handcuffs somebody who's taking him out of the room, he then looks into another room to the right, which is presumably the master bedroom, and he sees a scale with what appeared to be cocaine on the top of it. So once he saw that material in plain view, he was allowed to seize those items. That then gave him what he needed to go to talk to Ms. Shatley, the lessee of the apartment, who freely and voluntarily consented to the search of the apartment, and that's when the rest of the drugs were found. Let's assume that the scale and the white powder were not legally discovered. What effect would that have on the voluntariness of Nicole Shatley's consent to search? I think it would negate the voluntariness of the consent. I think the case law is pretty clear on that. It all depends on whether or not the officer was justified in following that defendant initially further into that apartment when he made the deliberately furtive movement, presumably to avoid arrest. Once the officer had permission to search and found all of the illegal contraband within the house, that's when he approached the defendant with all of the things that he found. He gave the defendant his Miranda rights. The defendant waived those rights. Again, at the station house, the defendant waived his Miranda rights. In addition, he signed an acknowledgement and waiver and made a written statement. He admitted that all of those items of illegal contraband were his. He denied that the firearm that was found was his, but it was determined by the trial court that that firearm belonged to Nicole Shatley, who was a valid firearm owner. She had a valid Freud card. So this defendant's confession was voluntary. There was no evidence of any coercion and I believe he validly waived those rights and the confession was lawfully admitted, as was all of the information of what the officers found when they arrived at the apartment. There was never any ruling with regard to the confession, though. There was a motion to suppress the statements that was filed, but the motion doesn't contain any indication that the trial court actually ruled on that. Well, the motion to suppress did contain a statement, I believe, that asked to have any proceeds from what the defense viewed as proceeds from the illegal search of the apartment. But I believe the trial court did make the conclusion, because it was allowed to be admitted at trial, that there was a confession made. So you're saying there was a specific ruling by the trial court on this? I believe there was. Our opposing counsel may prove me wrong on that, but I believe that that information did come in at the trial court. So in this case, the people believe the trial court correctly denied the motion to suppress and we would respectfully request this court affirm the decision of the trial court. I'll conclude now, unless there are any further questions by the court. Is your argument that Stigley's girlfriend's consent was a proper free and voluntary consent? Yes, we would agree that that's a... I'm just asking a question. Oh, I'm sorry, Your Honor. The state does take the position that that consent was freely and voluntarily given. Thank you, Your Honor. Thank you. Mr. Kirkham? Thank you, Your Honor. Just a few brief follow-up points. Justice Jorgensen, I think you're correct when you talk about where the distinguishing factor there that it started outside the house. The defendant in that case was in a public place and was pursued inside his house. That's the clear distinction from the facts of this case. Counsel correctly stated that the ruling of the trial court was that the defendant was arrested at, that is the word that Judge Rossetti used, at the doorway. But you can look at the testimony of Officer Willer, who the trial judge essentially found to be the most credible person who testified that day, and it's clear that from his testimony that the arrest was effected four feet inside the apartment, not... So, at the doorway, I'm not sure exactly what the word at means, but he was arrested inside his apartment. I would ask you to do this. Consider, again, the case of Peyton v. New York. That was a consolidated case. One of the two cases in that was the police went to the defendant's door and knocked on the door. The door was answered by the defendant's young child. Police officers saw, through the open doorway, the defendant sitting on a bed. And the police officer, upon seeing the defendant, entered the apartment and arrested him. And we know what happened there. The Supreme Court said that is not a valid entry into the apartment. That's not a good arrest. That's Peyton v. New York. I bring that up, and I want you to consider that, because it stands for the proposition that a police officer looking through an open door, seeing the defendant inside his residence, does not lead to permission for the officer to cross that threshold and arrest the defendant. There were no exigent circumstances in that? I don't think there were. No. Yeah. Now, if there, for argument's sake, is no hot pursuit here, are there other exigent circumstances that existed that, I mean, we heard earlier this was a crime of violence, the police officer knew that drugs might have been involved, I mean, why weren't the police concerned that evidence might be destroyed or that there were arms in there? Why weren't there exigent circumstances? There was probable cause to arrest the defendant. Because of this battery, it didn't seem like they delayed. We don't know the exact time frame. Why aren't there sufficient exigent circumstances to justify the entry into the apartment? If you say that there's exigent circumstances because of the broad-based and nonspecific rumor, I believe was the word you used, of drugs being sold in there, that is not how we should be getting around Payton versus New York, which draws a bright line and says exigent circumstances. There has to be some compelling reason to cross that threshold without a warrant. Well, if we put the drugs aside, what about the probable cause for the battery? The police didn't delay. They had the defendant in there. They entered peaceably. Peaceably, maybe, maybe not. If you're going to find exigent circumstances in this case, then I think you've set the bar so low that Payton is practically a non-factor anymore. There's always going to be probable cause. We can assume that. There was in this case. If you say, well, there's other things that might or might not be going on in there, it's always dangerous when you go to someone's door to arrest them. We're getting away from Payton. That's one of the core rights of the United States Constitution, to be secure in the privacy of your home. To say that we're going to find exigent circumstances on supposition and nonspecific factors, then Payton just doesn't matter hardly anymore. Do we all agree that the arrest occurred at the time the officer sees the defendant in front of the door inside the house? There was nothing like standing outside saying, you're under arrest. The arrest occurred inside the house, right? Two or four foot in. Is that correct? That's my reading of the facts, yes, your honor. My question to you is this. We appreciate that Payton is a fairly bright line with perhaps some discussion as to how big or how wide is the threshold. But this police officer, like it or not, does know that there is a battery that's taken place. It's arguably a violent crime. And he taking it in the worst case scenario, he has a rumor that there's drug trafficking. Any police officer on the street knows that if this is a place where there are regular deliveries, there's probably a weapon. So my question is this. The door opens, however it opens, and he sees the defendant, he knows this is the guy he's supposed to arrest, he knows that this is a person who has just been identified sometime that day as being engaged in sales, and he what is that police officer supposed to do? Retreat? Yes. Get a warrant. Regardless of his concerns about his own safety. If he retreats, I would submit that addresses the... And protect himself. Yeah, I think that they have to retreat and go get a warrant in that case. Because if you take the other position, the presence in the apartment is... So not just the presence, the observation of a quick retreat out of the sight of the officer. Does that create exigent circumstances in this case? No, I would submit that it does not. When you're inside the privacy of your house, what restrictions do we place on someone inside the privacy of their home? Is there a requirement that you have to speak with the police? That you have to step out in the hallway? I would submit that when he's inside his apartment, and he sees an officer outside, he's not obligated to... He could have just shut the door and... Yes. Yeah. Okay. Thank you. Thank you very much, counsel. The court will take the matter under advisement.